UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARILYN SUE SINCLAIR, | ) | CASE NO. 5:15CV1092 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | |
| ACTING COMMISSIONER OF | ) | REPORT AND RECOMMENDATION |
| SOCIAL SECURITY, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Marilyn Sue Sinclair ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying her application for disability insurance benefits ("DIB"). ECF Dkt. #1.  In her brief on the merits, filed on February 15, 2016, Plaintiff asserts that the administrative law judge ("ALJ") erred in her decision because: (1) she did not find Plaintiff to be entirely credible; and (2) her residual functional capacity ("RFC") findings were not supported by substantial evidence.  ECF Dkt. #12.  Defendant filed a brief on the merits on April 29, 2016.  ECF Dkt. #15.  Plaintiff did not file a reply.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and DISMISS the instant case with prejudice.

**I.      FACTUAL AND PROCEDURAL HISTORY**

On November 11, 2011, Plaintiff filed an application for DIB.  ECF Dkt. #10 ("Tr.") at 15.[2] The Social Security Administration denied Plaintiff's application initially and upon reconsideration.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled.  This allows the Court to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

*Id.*  Plaintiff requested a hearing before an ALJ.  *Id.*  On December 19, 2013, the ALJ held the requested hearing.  *Id.*

On January 30, 2014, the ALJ denied Plaintiff's application for DIB.  Tr. at 12.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 4, 2011.  *Id.* at 17.  Continuing, the ALJ determined that Plaintiff suffered from the following severe impairments: status post arthroscopy, right shoulder; tendon tear, left elbow; small protrusion, lumbar; and depression.  *Id.*  The ALJ opined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 18.  Next, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff could: occasionally push/pull with hand controls; occasionally reach overhead with the right upper extremity; frequently reach overhead with the left upper extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; never crawl; occasionally stoop, kneel, and crouch; and occasionally be exposed to unprotected heights and moving mechanical parts.  *Id.* at 19.  The ALJ further opined that Plaintiff must avoid concentrated exposure to humidity and wetness, extreme heat or cold, and pulmonary irritants.  *Id.*  Continuing, the ALJ indicated that Plaintiff could perform average, but not fast paced, production with no strict requirements, and that she could not perform conflict resolution or mediation.  *Id.*  The ALJ determined that Plaintiff was capable of performing past relevant work as a sales clerk, license clerk, or mail clerk, as work in these positions did not require the performance of work-related activities precluded by Plaintiff's RFC.  Tr. at 25.  Based on the above, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 4, 2011 through the date of the decision.  *Id.* at 26.

On June 1, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision.  ECF Dkt. #1.  Plaintiff filed a brief on the merits on February 15, 2016, asserting the following assignments of error:

1.  The [ALJ] committed reversible error in finding Plaintiff's testimony regarding the disabling effects of her symptoms to being [sic] entirely credible; and

-2-

      2.      The ALJ's findings are not, in their entirety, supported by substantial evidence.

ECF Dkt. #12 at 12, 16.  On April 29, 2016, Defendant filed a response brief.  ECF Dkt. # 15.  Plaintiff did not file a reply.

## II.      SUMMARY OF THE RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since September 4, 2011.  Tr. at 17.  Next, the ALJ found that Plaintiff suffered from severe impairments, as discussed above.  *Id.*

When determining whether Plaintiff had an impairment that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart 1, Appendix 1, the ALJ first looked to Listing 1.02(B) (major dysfunction of a joint(s)), 1.00(B)(2)(C) (loss of function), and 1.04 (disorders of the spine).  Tr. at 18.  The ALJ found that Plaintiff's impairments did not meet any of the above listings.  Next, the ALJ looked to Listing 12.04 (affective disorders).  The ALJ indicated that he considered whether Plaintiff's mental impairments satisfied the criteria of Listing12.04(B) by resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  *Id.*

The ALJ found that Plaintiff had mild restrictions in activities of daily living because she lived alone, worked part-time, drove herself to work, and drove thirty-nine minutes to the hearing.  Tr. at 18.  Further, the ALJ noted that a neighbor helped care for Plaintiff's two dogs and occasionally cooked meals.  *Id.*  Continuing, the ALJ determined that Plaintiff had mild difficulties in social functioning.  *Id.*  In making this determination, the ALJ indicated that Plaintiff worked in a customer-service oriented position where she dealt with people all day, regularly visited her father in a nursing home, regularly saw her neighbor, and had friends but did not like going dancing with them.  *Id.*  Regarding concentration, persistence, or pace, the ALJ found that Plaintiff had moderate difficulties.  *Id.*  The ALJ based this finding on Plaintiff earning a diploma with a medical office specialty from a two-year program and being capable of adequate concentration to work twenty-five

hours per week.  *Id.*  Further, the ALJ considered the fact that Plaintiff had power of attorney over her father, and that she was able to maintain concentration throughout the hearing and provided adequate responses to all questions posed.  *Id.*  The ALJ determined that Plaintiff had not experienced any episodes of decompensation.  *Id.* at 19.  Accordingly, the ALJ found that Plaintiff's mental impairments did not cause at least two of the marked limitations, or one marked limitation and repeated episodes of decompensation, and thus the criteria of 12.04(B) were not satisfied.

Continuing, the ALJ determined that Plaintiff had the RFC to perform light work with the restrictions discussed above.  Tr. at 19.  The ALJ indicated that Plaintiff sustained injuries to her right shoulder and elbow in a work accident in August 2011, and was rewarded Worker's Compensation benefits.  *Id.* at 20.  Continuing, the ALJ stated that Plaintiff did not return to work until December 2012, when she began working at the Bureau of Motor Vehicles ("BMV") on a part-time basis.  *Id.*  The ALJ indicated that Plaintiff suffered from pain and limited range of motion in her shoulder, but had adapted to do housework, and that Plaintiff's left elbow swelled and became extremely painful when lifting more than ten pounds.  *Id.*  The ALJ noted that Plaintiff's left hand went numb during flare ups of elbow pain.  *Id.*  Next, the ALJ indicated that Plaintiff had degenerative disc disease in her lumbar spine, and that her lower back would hurt badly when she lifted too much, mopped, or worked an eight-hour shift.  *Id.*  The ALJ stated that Plaintiff indicated her pain ranged from a 5 to a 7.5 out of 10.  *Id.*  The ALJ noted that Plaintiff exercised at home and took medication, but did not usually take her medication at work because it affected her concentration and made her tired.  *Id.*  Continuing, the ALJ indicated that Plaintiff took Vicodin at night after work, but also had to take Benadryl due to an allergy to the Vicodin.  The ALJ stated that Plaintiff did not take Vicodin the day of the hearing, but pain did not prevent her from fully participating in the hearing.  *Id.*

Next, the ALJ discussed Plaintiff's mental impairments, indicating that Plaintiff felt depressed that she was not working full-time and that adaptation to change was difficult for her.  Tr. at 20.  The ALJ stated that Plaintiff reported that crowds upset her and made her cry, but that Plaintiff was able to work at a small office that was not as busy as past work environments.  *Id.*

-4-

The ALJ stated that Plaintiff could stand for five minutes, was not aware of how long she could sit, and constantly alternated between sitting, standing, and walking while at work.  Tr. at 20. Continuing, the ALJ indicated that Plaintiff occasionally lifted twenty-five pound boxes at work and could carry light grocery bags.  *Id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  Tr. at 20.  To support this finding, the ALJ stated that Plaintiff had worked four shifts per week at the BMV, generally lasting four to five hours.  Tr. at 21.  Continuing, the ALJ indicated that Plaintiff worked eight-hour shifts up to twice per week when coworkers requested days off.  *Id.*  The ALJ stated that Plaintiff issued driver's licenses and license plates, updated information, gave visual examinations, input data into a computer, and took photographs while at work.  *Id.*  Further, the ALJ indicated that Plaintiff occasionally lifted twenty-five pound boxes of license plates despite her statement regarding experiencing difficulty when lifting twenty-five pounds.  *Id.*  The ALJ stated that Plaintiff's work at the BMV also required adequate social skills and concentration, persistence, and pace to deal with the public, obtain and record information, and operate a computer.  *Id.*  The ALJ indicated that Plaintiff performed these duties without using her pain medication, which contradicted her allegations of disabling pain.  *Id.*  Continuing, the ALJ determined that the fact that Plaintiff had completed a two-year vocational program in February 2012 was further evidence that Plaintiff's concentration and social deficits were not disabling, and that the activities in which Plaintiff engaged were inconsistent with the level of limitations alleged.  Accordingly, the ALJ did not find Plaintiff's reports entirely credible.  *Id.*

Additionally, the ALJ discussed a letter Plaintiff submitted after the hearing, indicating that her work at the BMV ended in January 2014 and stating that the primary reasons were Plaintiff requesting time off from work to care for her ill husband, repeated mistakes, and her own absences from work.  Tr. at 21.  The ALJ noted that there was no documentation of Plaintiff's reprimands or extended absences from work.  Continuing, the ALJ stated that given the fact that Plaintiff was employed in the same position for twenty-three months, she did not find the post-hearing allegations

-5-

of difficulty performing work to be credible.  The ALJ afforded more weight to the hearing testimony, given under oath, than Plaintiff's post-hearing letter, and indicated that, regardless of the reason Plaintiff left work, the ability to care for another person (her ailing husband) was indicative of the ability to work.  *Id.*

Regarding Plaintiff's allegations of depressive symptoms, the ALJ found that the record did not support Plaintiff's alleged limitations.  Tr. at 21.  The ALJ stated that there was no record of specialized mental health treatment since the mid-1990's, and that the only treatment was medication from primary-care physicians.  *Id.*  The ALJ indicated that Plaintiff did not like her medication and could not afford an alternative, and that Plaintiff indicated that she would pray instead of seeking treatment.  *Id.*

Moving on to Plaintiff's physical symptoms, the ALJ stated that Plaintiff suffered a work-related injury in October 2010 that resulted in bursitis and tendonitis in her right shoulder with a tear of the superior glenoid labrum.  Tr. at 21.  The ALJ indicated that Plaintiff was off work for thirty days, then returned to work using her left arm only to operate a cash register.  *Id.*  Continuing, the ALJ stated that Plaintiff reported pain in her left elbow in 2011, but x-rays were unremarkable and testing was negative for deep venous thrombosis.  *Id.*  The ALJ indicated that a April 2011 MRI of Plaintiff's left elbow showed epiconylitis with tendinitis and a partial tear or detachment of the tendon, but no evidence of other internal or external derangement.  *Id.* at 22.  The ALJ stated that Plaintiff's doctor recommended cortisone injections in August 2011, noting a decreased range of motion.  *Id.*  Next, the ALJ stated that a left elbow examination in September 2011 showed lateral humeral epicondylitis with pain on resisting dorsiflexion and pain of the epicondyle.  *Id.*  The ALJ indicated that Plaintiff's doctor again recommended that Plaintiff get cortisone injections, but the injections were not approved by Worker's Compensation.  *Id.*  The ALJ noted that Worker's Compensation awarded Plaintiff $10,000 to be used for treatment, including surgeries.  *Id.*

The ALJ indicated that Plaintiff visited a doctor in February 2012, and was noted as having a limited range of motion in the right shoulder, decreased motor power and a click with right shoulder motion, and a tender left elbow with a decreased range of motion.  Tr. at 22.  Continuing, the ALJ discussed Plaintiff's March 2012 examination, during which she had a good range of

motion, a normal neurology exam, normal gait, normal reflexes and sensory functioning, and no signs of depression. *Id.* The ALJ indicated that x-rays of Plaintiff's right shoulder and left elbow were normal, although previous MRI evidence showed abnormalities. *Id.* The ALJ noted that the doctor conducting the examination referred Plaintiff for physical therapy and a surgical consult to address tenderness and difficulty reaching. *Id.* Finally, the ALJ indicated that Plaintiff underwent a right shoulder arthroscopy in June 2012, and that there was little evidence of treatment for right shoulder symptoms after the surgery and the subsequent records reflect a decrease in complaints. *Id.*

Next, the ALJ discussed Plaintiff's report of back pain in the summer of 2012. Tr. at 22. The ALJ noted that the report of lower back pain occurred just weeks before requesting a disability hearing. Continuing, the ALJ indicated that an MRI of Plaintiff's lumbosacral spine showed a disc protrusion without significant stenosis or foraminal narrowing, and that an updated MRI in September 2012 showed no changes. *Id.* The ALJ stated that Plaintiff consulted with a doctor in August 2012, during which testing showed that Plaintiff could walk heal-to-toe normally and that her strength was normal in all extremities. *Id.* Additionally, the ALJ noted that Plaintiff's gait, coordination, reflexes, and spinal range of motion were all normal, straight leg testing was negative, and Plaintiff was treated conservatively with medications. *Id.* The ALJ indicated that one month later, Plaintiff reported left lower extremity numbness in her leg and foot, that she was feeling better, and that pain was at a five out of ten. *Id.* The ALJ stated that Plaintiff was advised to use medication and physical therapy, and that she did not want injections. *Id.*

As indicated by the ALJ, Plaintiff began working part-time at the BMV in December 2012. Tr. at 23. The ALJ stated that Plaintiff requested refills of Vicodin in January 2013, telling her doctor that it was the only medication she was not allergic to, although at the hearing Plaintiff testified that she was allergic to Vicodin and had to take Benadryl due to the allergy. *Id.* According to the ALJ, Plaintiff reported to her doctor that she used two Vicodin pills per day and that the pills helped control her pain. *Id.* Additionally, the ALJ stated that Plaintiff's gait was normal and she had a full range of motion in all joints, and that the only abnormal finding during this examination

was tenderness in Plaintiff's lower back.  *Id.*  Further, the ALJ indicated that Plaintiff complained of neck pain in late-2013, however, cervical and thoracic x-rays were normal.  *Id.*

Based on the above, the ALJ found that the medical records did not establish disability, stating that the conservative treatment, mild objective findings, and relatively normal clinical findings since Plaintiff's surgery were consistent with the ability to work at a reduced level of light work.  Tr. at 23.

Next, the ALJ discussed her decision to give the opinions of the two state-agency consultants great weight because the opinions were consistent with the record as a whole, and despite Plaintiff's assertion that newer evidence supports additional limitations, the newer records actually showed less complaints due to Plaintiff's severe impairments.  Tr. at 23.  The ALJ indicated that the state-agency consultants opined that Plaintiff could perform light work where she: never climbed ladders, ropes, or scaffolds; occasionally climbed ramps or stairs; and occasionally reached overhead with her right shoulder.  Continuing, the ALJ stated that the state-agency consultants opined that Plaintiff: was limited in her ability to respond appropriately to work pressures in a work setting; would do best in a work environment where duties are simple and repetitive, and changes could be adjusted to over time; and would do best in a setting that requires only brief interaction with the general public.  *Id.*

The ALJ gave limited weight to the opinion of Plaintiff's treating physician, stating that the treating physician offered conflicting opinions, first saying that Plaintiff was capable of working with certain restrictions, and then, a few months later, opining that Plaintiff was temporarily totally disabled.  Tr. at 23.  The ALJ noted that in the latter opinion from Plaintiff's treating physician, the physician also stated that cortisone injections would be curative of Plaintiff's conditions and that surgery would be an option if the injections failed.  *Id.*

Continuing, the ALJ addressed the opinions of the physicians that Plaintiff visited in relation to her Worker's Compensation claim.  Tr. at 23.  Plaintiff was required to undergo regular follow-up visits as part of her claim, and the physicians she visited prepared assessments.  *Id.*  The ALJ gave some weight to this series of opinions from late-2010 through late-2011, finding the assessments credible regarding long-term improvement in Plaintiff's condition, but stated that no one assessment

-8-

accurately portrayed Plaintiff's RFC as each assessment only provided insight into short-term levels of functioning (four to six weeks). *Id.* at 24. The ALJ determined that the assessments indicated short-term periods of total disability interspersed with periods of the ability to perform work fluctuating between light and sedentary exertional levels, and based upon the longitudinal improvement and newer records, the ALJ found that the record as a whole was consistent with Plaintiff's ability to perform a range of light work. *Id.*

The ALJ outlined an opinion from a state-agency physician indicating that Plaintiff: showed 5/5 strength throughout her upper extremities with normal grip strength; showed no muscle atrophy or spasms; had a decreased range of motion in her shoulders and dorsolumbar spine, but a normal range of motion in her elbows; had normal sensory functioning, reflexes, and gait; and was limited to lifting ten pounds due to severe elbow and shoulder impairments resulting in restricted muscle strength and range of motion in both arms. Tr. at 24. The ALJ afforded great weight to this opinion because it accommodated the documented limitations and was consistent with the record as a whole. *Id.*

Next, the ALJ discussed the state-agency psychological examination of Plaintiff. Tr. at 24. The state-agency psychological assessment indicated that Plaintiff: performed housework; read mysteries; spent time with two coworkers and a friend; and colored with her granddaughter. *Id.* The ALJ indicated that the assessment stated that Plaintiff's grooming and hygiene were good. Further, the ALJ stated that the assessment indicated that Plaintiff: was capable of completing a serial three subtraction tasks, committing only one error in six responses; could recall three of six objects after a period of five minutes had elapsed; was able to recall six digits forward and four digits backward; could name four recent United States Presidents; and offered good responses to three of four analogies presented to her. *Id.* Continuing, the ALJ noted that the assessment indicated that Plaintiff had little limitation in social functioning, very little limitation in concentration, persistence, and pace, and would have some limitation handling work stress, although the latter could be improved with counseling. *Id.* The ALJ gave great weight to this assessment because it was well supported and was not contradicted by any treating source. *Id.*

-9-

After indicating that she had carefully considered the entire record, the ALJ found that Plaintiff had certain limitations because of medically determinable impairments, however, the limitations alone or in combination did not preclude all levels of basic work-related activities.  Tr. at 24.

Based on the above, the ALJ determined that Plaintiff was capable of performing past relevant works as a sales clerk, license clerk, or mail clerk.  Tr. at 25.  The ALJ found that Plaintiff was an individual approaching advanced age, had at least a high school education, and was able to communicate in English.  *Id.*  Next, the ALJ indicated that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled whether she had transferable job skills.  *Id.*  In the alternative, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform.  *Id.*  The ALJ indicated that this finding was based on the testimony of the vocational expert, who stated that, considering the extent to which Plaintiff's limitations erode the unskilled light occupation base, Plaintiff could perform the representative occupations of cashier and office clerk.  *Id.* at 26.  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 4, 2011 through the date of the decision.  *Id.*

## III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.   An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see   20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

-10-

4.   If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.   If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.**   **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based

upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

**V.      LAW AND ANALYSIS**

**A.      First Assignment of Error**

Plaintiff's first assignment of error asserts:

1.    The [ALJ] committed reversible error in finding Plaintiff's testimony regarding the disabling effects of her symptoms to being [sic] entirely credible.

ECF Dkt. #12 at 12.  Plaintiff begins by arguing that the ALJ failed to consider all the factors promulgated in Social Security Rule ("S.S.R.") 96-7p.[3]  *Id.*  S.S.R. 96-7p, citing 20 C.F.R. §§ 404.1529(c) and 416.929(c), describes the kinds of evidence, including the following factors, that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measure other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations due to pain or other symptoms.

Plaintiff argues that the ALJ failed to include Plaintiff's left elbow lateral epicondylitis with lateral tendonitis that resulted from the overuse of her left arm after her right shoulder was injured while she was at work.  ECF Dkt. #12 at 12-14.[4]  Plaintiff also asserts that "[t]he ALJ cited parts, but not the entirety of Plaintiff's statements made at the hearing to support her adverse credibility

---

[3]S.S.R. 96-7p was superceded by S.S.R. 16-3p on March 28, 2016.  Plaintiff's brief was filed on February 15, 2016.  ECF Dkt. #12.  Both S.S.R. 96-7p and S.S.R. 16-3p contain the same seven factors listed in 20 C.F.R. §§ 404.1529(c) and 416.929(c).

[4]This assertion appears at the bottom of page twelve and the top of page fourteen.  Page thirteen is a duplicate of page twelve.  *See* ECF Dkt. #12 at 12-14.

-12-

findings." *Id.* at 15.  Continuing, Plaintiff claims that the ALJ mischaracterized Plaintiff's statements in the medical records by suggesting that Plaintiff rejected treatment, but, in fact, Plaintiff did not obtain treatment due to her inability to afford the treatment.  *Id.*  Plaintiff concludes by asserting that "[t]he ALJ's credibility findings are simply not supported by evidence in the record." *Id.*

Defendant asserts that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptoms and that it is the job of the ALJ, not the reviewing court, to evaluate a claimant's credibility.  ECF Dkt. #15 at 4.  Continuing, Defendant argues that the ALJ discussed all seven factors promulgated in S.S.R. 96-7p, that the ALJ carefully weighed the medical and other evidence in assessing Plaintiff's subjective complaints, and her conclusions were reasonable.  ECF Dkt. #15 at 5-9.

Plaintiff's arguments fail.  Defendant is correct in asserting that an ALJ's determination of credibility is afforded great weight and deference, "particularly since the ALJ has the opportunity... of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003).

> Our role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.  Instead, we focus on whether substantial evidence supports the Commissioner's determination that [a claimant] is disabled within the meaning of the Social Security Act.

*Foster v. Halther*, 279 F.3d 348, 353 (6th Cir. 2001).  The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole*, 661 F.3d at 937 (internal citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers,* 486 F.3d at 234.  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton*, 246 F.3d at 773.  However, an ALJ's failure to follow agency rules and

-13-

regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole,* 661 F.3d at 937.

Plaintiff devotes the majority of her argument to the issue of her credibility, the first assignment of error, rather than the issue of whether substantial evidence supports the ALJ's decision, the second assignment of error. *See* ECF Dkt. #12 at 12-16. First, Plaintiff asserts that the ALJ failed to follow agency rules, specifically S.S.R. 96-7p, when making a finding as to Plaintiff's credibility. However, after listing the seven factors provided in S.S.R. 96-7p, Plaintiff barely mentions these factors or indicates to which factor she is arguing the ALJ failed to take into consideration when assessing her credibility. *See* ECF Dkt. # 12 at 12-15. Instead, Plaintiff provides specific instances when she believes that the ALJ failed to consider a medical condition or portions of the testimony provided by Plaintiff at the hearing. *Id.*

Plaintiff takes issue with the fact that the ALJ "did not include in her finding that claimant's left elbow injury included not only a tendon tear of the left elbow but also left elbow lateral epicondylitis with lateral tendonitis as a result of overuse of her left arm following a right shoulder injury at work." ECF Dkt. #12 at 12-14.[5] Plaintiff makes no argument as to why the ALJ would be required to cite to this specific piece of medical information in her decision, or as to why the failure to do so should be cause to remand Plaintiff's case. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citations omitted). Moreover, Plaintiff provides no argument as to how this omission undermines the ALJ's credibility determinations, but rather appears to be simply pointing out the fact that the ALJ did not specifically mention this piece of medical evidence in her decision. That being said, Defendant correctly states that Plaintiff is simply wrong in her assertion. The ALJ does specifically mention this piece of medical evidence, stating:

> [Plaintiff] reported pain and swelling in her left elbow in March 2011. X-rays were unremarkable and testing was negative for deep venous thrombosis. An April 2011 left elbow MRI showed *epicondylitis with tendinitis and a partial tear or detachment of the tendon.*

---

[5]*See* n. 4, *supra.*

-14-

Tr. at 11-12 (emphasis added).

Plaintiff next argues that the ALJ failed to consider portions of her hearing testimony concerning her: severe pain after working an eight-hour shift; choice not to take Vicodin at work due to the side effects; allergy to Vicodin and use of Benadryl in response to the allergy; choice to take Vicodin in the evening due to the allergy; and difficulty in lifting twenty-five pounds boxes of license plates. ECF Dkt. #12 at 14-15. Plaintiff argues that "[t]he ALJ cited parts, but not the entirety of, Plaintiff's statements made at the hearing to support [the ALJ's] adverse credibility findings." *Id.* at 15. Again, Defendant points out that Plaintiff is simply wrong. ECF Dkt. #15 at 7-8.

The ALJ considered Plaintiff's pain after working an eight-hour shift, stating, "[w]hen [Plaintiff] lifts too much, mops, or works an eight-hour shift, her lower back hurts so much that it is difficult to walk up the stairs to her home." Tr. at 20. In that same paragraph, the ALJ discussed the fact that Plaintiff did not take Vicodin at work because it affects her concentration and makes her tired, and that Plaintiff takes Vicodin when she returned home from work. *Id.* The ALJ also indicated that due to an allergy to the Vicodin, Plaintiff takes Benadryl. *Id.* Likewise, the ALJ indicates that Plaintiff occasionally lifted twenty-five pound boxes at work, and that she only lifts the boxes occasionally when no one else is available to lift the boxes. *Id.* at 16-17. It is clear from the ALJ's decision that Plaintiff's testimony regarding the above issues was considered, and the ALJ's consideration was memorialized in the written decision.

Plaintiff also contends that the fact that she attended college for twelve hours a week did not establish that she was capable of engaging in substantial gainful activity. ECF Dkt. #12 at 15. The ALJ stated, "[t]he fact that Plaintiff completed a two-year vocational program in February 2012 is further evidence that her concentration and social deficits are not disabling." Tr. at 21. Contrary to Plaintiff's assertion, the ALJ did not find that Plaintiff was capable of engaging in substantial gainful activity because of her college attendance. Rather, the ALJ considered this piece of information, along with numerous other activities outlined immediately above the ALJ's statement regarding Plaintiff attending college, to determine that Plaintiff's activities were inconsistent with her alleged level of limitation. The other activities considered by the ALJ, along with Plaintiff's

-15-

college attendance, were: working for the BMV and a description of Plaintiff's duties; lifting twenty-five pound boxes at work; constantly altering between sitting, standing, and walking while at work; maintaining adequate social skills and concentration, persistence, and pace to deal with the public; obtaining and recording information; and using a computer system.  *Id.*  These activities were considered jointly by the ALJ in assessing Plaintiff's credibility.  Contrary to Plaintiff's assertion, the ALJ did not find that Plaintiff could engage in substantial gainful activity since she had attended college part-time.

Finally, Plaintiff claims that the ALJ mischaracterized Plaintiff's statements in the medical record when she indicated that "[Plaintiff] was not interested in receiving injections."  ECF Dkt. #12 at 15 (quoting Tr. at 22).  Plaintiff asserts that the medical record actually demonstrates that Plaintiff did not seek injections because of an inability to afford the injections.  *Id.*  Plaintiff quotes from the medical record to support her position, stating, "[s]he notes she is unable to afford neurotin - does not have insurance coverage for medication.  Injection interventions discussed would like to defer at this time."  *Id.* (quoting Tr. at 772).  After quoting the above portion of the record, Plaintiff asserts:

> The ALJ appears to have mischaracterized [Plaintiff's] statements in the hospital record, which do not suggest a rejection of treatment, but, rather, an inability to afford treatment at that time.

ECF Dkt. #12 at 15.  The language from the medical record cited by Plaintiff belies her position.  The medical record indicates that Plaintiff is unable to afford medications, such as neurotin, due to lack of insurance coverage.  Immediately following the statement regarding medications, the medical record states that the choice was made to defer injections, but says nothing about why a deferral of that form of treatment was the option chosen, or who made that choice.  The ALJ reasonably interpreted this portion of the medical record as indicating that Plaintiff deferred the injections, particularly as Plaintiff's inability to afford medications was addressed in the previous sentence, but was not addressed when discussing potential injections.  Plaintiff has not shown that the ALJ mischaracterized any of her statements, and, even if Plaintiff could show that the ALJ mischaracterized this statement, Plaintiff has failed to demonstrate how the ALJ's alleged error regarding this sole statement would be cause to remand this case.

-16-

Plaintiff has failed to show that the ALJ committed reversible error in finding Plaintiff's testimony regarding the disabling effects of her symptoms to not be entirely credible.

### B.      Second Assignment of Error

Plaintiff's second assignment of error asserts:

2.      The ALJ's findings are not, in their entirety, supported by substantial evidence.

ECF Dkt. #12 at 16.  Plaintiff's argument in support of her second assignment of error, in its entirety, consists of the following:

> In her decision, the ALJ stated that she gave the assessments of the State Agency consultants "great weight". [sic]  One of these assessment [sic] was the report of Greg Moten, D.O., who examined [Plaintiff] on February 9, 2012 and was apparently the basis for the report of Dr [sic] Das dated August 12, 2012.  Dr [sic] Moten made no mention in his report of Plaintiff's low back diagnosis or symptoms because, presumably, his examination was done prior to her lumbar MRI scan in June 2012. Dr [sic] Moten limited [Plaintiff] to occasional lifting of 20 lb [sic] and frequently lifting 10 lb [sic]. Dr [sic] Das suggested the same limitations but neither showed any knowledge of low back problems.  Their reports are nevertheless given great weight.  Given the shortcomings of these Agency reportsby [sic] non-treating physicians and the ALJ's failure to request supplemental reports, there is not evidence to support the ALJ's physical RFC findings and for this reason alone, [Plaintiff] is entitled to a remand.

*Id.*

Plaintiff asserts that the report prepared by Dr. Moten in February 2012 could not have considered Plaintiff's June 2012 MRI report, and that Dr. Moten's February 2012 report "was apparently the basis" for Dr. Das' August 2012 report.  Plaintiff provides no argument as to why she believes that Dr. Das based her report on Dr. Moten's report beyond the fact that the reports made the same finding as to how much weight Plaintiff could lift occasionally and frequently. There is no explanation provided by Plaintiff as to why Dr. Das did not consider the June 2012 MRI report in her consideration beyond the fact that Dr. Das did not specifically mention lower back problems. ECF Dkt. #12 at 16.  Plaintiff's assertion that Dr. Das did not review the June 2012 MRI report is speculation, as is the assertion that Dr. Das based her report on the report of Dr. Moten.

Even if Plaintiff is correct in speculating that Dr. Das did not review the June 2012 MRI report, the ALJ did review and consider the report, as evidenced by her mention of the June 2012 MRI and an updated MRI taken in September 2012.  Tr. at 22.  The ALJ found Plaintiff's small lumbar protrusion, as shown in the June 2012 MRI, to be a severe impairment.  Tr. at 17.  Plaintiff

-17-

does not argue why the small disc protrusion should require a more limited RFC than the ALJ's RFC finding.  Plaintiff makes no argument as to why the ALJ's decision was not supported by substantial evidence beyond asserting, without substantial support, that neither Dr. Moten or Dr. Das took Plaintiff's lower back pain into consideration when preparing their reports.  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers,* 486 F.3d at 234.  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  Plaintiff has failed to show that the ALJ's RFC's findings were not supported by substantial evidence.

**VI.**     **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and DISMISS the instant case with prejudice.


DATE: June 13, 2016                         */s/George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).